UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL W. CONGER,

        Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.

Case No. C11-653-RSM-BAT

**REPORT AND RECOMMENDATION**

Michael W. Conger seeks review of the denial of his Supplemental Security Income application. He contends that the ALJ improperly rejected Mr. Conger's testimony and the opinions of Mr. Conger's treating psychiatrist and the examining psychologists. Dkt. 20. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

### I.    FACTUAL AND PROCEDURAL HISTORY

Mr. Conger is currently 59 years old, has a GED education, and has worked as a plumber.[1] On June 28, 2006, he applied for benefits, alleging disability as of January 1, 2004. Tr. 152. He later amended his alleged onset date to June 28, 2006. Tr. 475-76. His application was denied initially and on reconsideration. Tr. 57, 62. The ALJ conducted a hearing on

---

[1] Tr. 41, 152, 178.

REPORT AND RECOMMENDATION - 1

October 26, 2009, and on November 10, 2009, issued a decision finding that Mr. Conger was not disabled before June 11, 2009, but he became disabled due to injuries from a motorcycle accident on that date. Tr. 12-28. As the Appeals Council denied Mr. Conger's request for review, the ALJ's decision is the commissioner's final decision. Tr. 1.

## II. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ made the following findings:

**Step one:** Mr. Conger had not engaged in substantial gainful activity since June 28, 2006.

**Step two:** Since June 28, 2006, Mr. Conger has had the following severe impairments: hepatitis C, history of opiate dependence (on agonist therapy), and depressive disorder NOS. Beginning on June 11, 2009, Mr. Conger has had the following additional severe impairments: history of fractures of the bilateral ankles and right elbow, status post surgery.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity:** Before June 11, 2009, Mr. Conger had the residual functional capacity (RFC) to lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk for a total of about 6 hours in an 8-hour workday, and sit for a total of about 6 hours in an 8-hour workday. He was precluded from climbing ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs. He needed to avoid concentrated exposure to extreme cold, poor ventilation, hazards, and heights. He had the mental capability to adequately perform the mental activities generally required by competitive, remunerative work as follows: He was able to understand, remember, and carry out simple 2- to 3-step instructions; had average ability to perform sustained work activities (i.e., could maintain attention and concentration, persistence, and pace) in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day for 5 days a week, or an equivalent schedule) within customary tolerances of employer rules regarding sick leave and absence; could make judgments on simple work-related decisions; could respond appropriately to supervision and a few coworkers; and could deal with changes, all within a routine work setting. He was not able to deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process. However, incidental contact with the general

---

[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

public was not precluded.

Beginning on June 11, 2009, Mr. Conger had the RFC to perform sedentary work except that he had the mental capability to adequately perform the mental activities generally required by competitive, remunerative work as described above for the period before June 11, 2009.

**Step four:** Mr. Conger could not perform his past work.

**Step five:** Before June 11, 2009, there were jobs that existed in significant numbers that Mr. Conger could have performed. Beginning on June 11, 2009, there were no jobs that existed in significant numbers that Mr. Conger could have performed. Mr. Conger was therefore not disabled before June 11, 2009, but became disabled on that date.

Tr. 12-28.

### III. DISCUSSION

#### A. The ALJ's credibility determination

Mr. Conger argues that the ALJ erred in finding his statements about his symptoms not fully credible before June 11, 2009. The ALJ did not find that Mr. Conger was malingering. Thus, the ALJ was required to provide clear and convincing reasons to reject his testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An ALJ does this by making specific findings supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

The ALJ gave several reasons for finding Mr. Conger not fully credible. First, the ALJ found that Mr. Conger's allegations of disabling symptoms were inconsistent with a number of clinical findings. The ALJ noted that on certain occasions, Mr. Conger demonstrated recall of three out of three objects immediately, accuracy on serial 7s back to 58, no errors on serial 3s, ability to spell the word "world" backwards, linear thought process, and digit span forward within normal limits. Tr. 22.

The ALJ can consider a lack of supporting objective medical evidence in his credibility analysis. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). But when evaluating credibility, the ALJ must consider the entire case record. *See* 20 C.F.R. § 416.945(a); Social Security Ruling (SSR) 96-7p. Here, the ALJ ignored a number of clinical findings that supported Mr. Conger's allegations. The ALJ failed to note, for example, that Mr. Conger consistently had difficulty recalling three objects after a three-minute delay (Tr. 350, 377, 387, 381), was unable to perform serial 7s on several occasions (Tr. 387, 381, 404), was unable to spell "world" backwards on one occasion (Tr. 381), was deficient in performing digit span backwards on several occasions (Tr. 377, 381), and scored below the 10th percentile on trail making tests (Tr. 378). The complete picture of Mr. Conger's performance on mental status exams undermines the ALJ's finding that the exams do not support his allegations. Substantial evidence does not support this reason for questioning Mr. Conger's credibility.

Second, the ALJ noted that treatment records indicate Mr. Conger worked as a plumber in 2005 despite experiencing insomnia and undergoing methadone treatment. The ALJ found that as there was no objective evidence Mr. Conger's impairment worsened before June 11, 2009, the fact that he worked despite his impairments before the alleged onset date suggests that they would not have precluded him from working in the period before his motorcycle accident. Tr. 22-23.

Mr. Conger does not allege that he was unable to work before June 2006. Thus, his ability to work before that time does not call into question to his ability to work after that date. In addition, as Mr. Conger points out, there is no indication that his work as a plumber in 2005 was substantial gainful activity. In fact, the treatment note in question, from June 2005, states: "He is self employed as a plumber and feels that his insomnia is affecting his business." Tr. 309.

The note shows that Mr. Conger was having difficulty working even prior to his alleged onset date. This note is of questionable relevance to the credibility of Mr. Conger's allegations regarding a period of time beginning one year later and does not provide substantial evidence to support the ALJ's adverse credibility finding.

Third, the ALJ found that Mr. Conger did not receive the type of treatment one would expect given his reports of disabling symptoms. The ALJ noted that Mr. Conger initially entered treatment only for drug rehabilitation, he reported in June 2007 that he was not receiving any mental health treatment, and there is no record of treatment specifically for depression until September 2007, more than a year after the alleged onset date. Tr. 23.

Unexplained, or inadequately explained, failure to seek treatment can be a clear and convincing reason to question a claimant's credibility. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, the ALJ may not draw inferences from a claimant's failure to seek treatment without first considering any explanations the claimant may provide or other information in the case record that may explain this failure. SSR 96-7p. This is particularly true in the case of mental impairments, because a person suffering from a mental illness may not realize that he needs medication, or even that his "condition reflects a potentially serious mental illness." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). For this reason, it is "a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Id.* (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).

Here, the record shows that Mr. Conger had difficulty discussing his symptoms and the underlying causes of his mental illness, both with his treating psychiatrist and at the ALJ hearing. Tr. 402-03, 482, 491. He did not seek mental health treatment until he was referred for an

evaluation by his drug treatment program. But once he entered treatment, he attended therapy sessions and took his medications regularly. Tr. 414-25, 451-58. Despite the evidence that Mr. Conger may not have sought treatment due to the very nature of his impairments, the ALJ failed to consider the effect of Mr. Conger's mental impairments or any other explanation for Mr. Conger's failure to seek treatment before June 2007. The ALJ thus erred by relying on this reason for questioning Mr. Conger's credibility.

And fourth, the ALJ found that Mr. Conger described daily activities that were not as limited as one would expect given his report of disabling symptoms. The ALJ noted that despite allegations of profound difficulty concentrating, Mr. Conger was injured while riding a motorcycle, an activity that requires at least adequate concentration. The ALJ also noted Mr. Conger's reports that he dresses and bathes himself daily, cleans, does laundry, feeds pets, prepares simple meals, goes outside every day, uses public transportation, shops in stores and by mail, handles his own finances, and takes long walks. Tr. 23.

Daily activities that are transferrable to a work setting may be grounds for an adverse credibility finding. *Fair*, 885 F.2d at 603. But daily activities that do not contradict a claimant's other testimony or meet the threshold for transferrable work skills cannot form the basis of an adverse credibility determination. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). "[T]he mere fact that a plaintiff has carried on certain activities such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly' incapacitated in order to be disabled." *Vertigan*, 260 F.3d at 1049 (quoting *Fair*, 885 F.2d at 603)).

Here, the ALJ did not find that Mr. Conger's daily activities would be transferrable to a work setting, nor is there any indication that this is the case. And Mr. Conger's reports of daily

activities do not contradict his other testimony.  The fact that Mr. Conger carries out the kinds of basic daily activities he reports is not incompatible with his alleged symptoms or with a finding of disability.  Substantial evidence does not support this reason for questioning Mr. Conger's credibility.

In sum, the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for finding Mr. Conger not fully credible.

**B.      The ALJ's step-two finding**

Mr. Conger next argues that the ALJ erred in rejecting the diagnosis of treating psychiatrist Paul Grekin, M.D., that Mr. Conger has the medically determinable severe impairment of post-traumatic stress disorder (PTSD).  Dkt. 20 at 14.

Dr. Grekin began treating Mr. Conger in September 2007.  Upon initial evaluation, Dr. Grekin diagnosed Mr. Conger with PTSD, rule out panic disorder, and opioid dependency on agonist therapy.  Dr. Grekin noted that Mr. Conger reported frequent nightmares of traumatic events, intrusive memories, and avoidance of stimuli that remind him of the events, but did not feel comfortable discussing the nature of these events.  Dr. Grekin opined: "From a psychiatric standpoint he clearly seems to have symptoms of Post Traumatic Stress Disorder although the nature of his trauma was not discussed."  Tr. 402-05.

In September 2008, after a year of regular treatment, Dr. Grekin completed a psychiatric evaluation form.  He listed diagnoses of PTSD, major depression, and opioid dependence on agonist therapy.  He opined that Mr. Conger would have moderate or marked limitations in cognitive abilities and mild or marked limitations in social abilities.  Dr. Grekin noted that Mr. Conger had extreme difficulty accomplishing basic tasks and coping with social interactions or unexpected events between sessions.  Tr. 398-401.

In November 2008, Dr. Grekin opined that Mr. Conger's impairments met listing 12.04, affective disorders, with marked restrictions in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace. Dr. Grekin further opined that Mr. Conger's limitations had existed at these levels since June 28, 2006, stating that his condition had been worsening for the past five years and he has great difficulty accomplishing tasks outside of his narrow routine. Tr. 407-13.

In January 2010, after the ALJ issued his decision, Dr. Grekin wrote a letter to the Appeals Council in which he elaborated on his PTSD diagnosis. Dr. Grekin identified the symptoms that led to his diagnosis and discussed Mr. Conger's reluctance to talk about the significant traumatic event that triggered his PTSD. Dr. Grekin stated that it had taken over two years for Mr. Conger to even allude to abuse by his father. Dr. Grekin also discussed in more detail his opinions on Mr. Conger's cognitive and social limitations. Tr. 470-71.

In his step two analysis, the ALJ considered Dr. Grekin's diagnosis of PTSD but found that it was based on Mr. Conger's generalized report of past trauma without any details of the events that would support the diagnosis. The ALJ also found that Mr. Conger had identified few functional limitations that would stem from PTSD. The ALJ noted that Mr. Conger had initially entered treatment for drug abuse, not PTSD or anxiety, he denied childhood or other trauma in a consultative psychiatric examination in June 2007, and he endorsed some symptoms of PTSD but not anxiety, flashbacks, or hypervigilance. The ALJ thus gave Dr. Grekin's diagnosis little weight and found that PTSD was not a severe impairment. Tr. 19.

At step two, a claimant must make a threshold showing that (1) he has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R.

§ 404.1520(c), 416.920(c). The step-two inquiry is a "*de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment is medically determinable if it results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1528. An impairment can be found "not severe" only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *Smolen*, 80 F.3d at 1290.

An ALJ may not substitute his own interpretation of the medical evidence for the opinion of a medical professional. *See Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999). By rejecting Dr. Grekin's PTSD diagnosis because Mr. Conger did not report details of his past trauma and because he reported some but not all symptoms of PTSD, the ALJ did just that. Although Mr. Conger was initially reluctant to identify the nature of his trauma, Dr. Grekin nevertheless diagnosed Mr. Conger with PTSD. Dr. Grekin was satisfied that Mr. Conger met all the diagnostic criteria for PTSD, including exposure to trauma. The ALJ may not reject this opinion simply because he is not similarly satisfied.

Moreover, as Mr. Conger's treatment progressed, he was able to discuss his past trauma with Dr. Grekin. In December 2008, he alluded to abuse in foster care. Tr. 457. In April 2009, he related a story of being molested at ages 6 and 7. Tr. 454. And in Dr. Grekin's January 2010 letter to the Appeals Council, Dr. Grekin stated that it had taken over two years for Mr. Conger to even allude to abuse by his father, and that this avoidance is consistent with a diagnosis of PTSD.[4] Tr. 470. This evidence provides additional support for Dr. Grekin's diagnosis. The

---

[4] Although Mr. Conger submitted this letter to the Appeals Council, and the ALJ did not consider it, this Court may consider it in determining whether the ALJ's decision is supported by substantial evidence. *See Ramirez v. Shalala*, 8 F.3d 1449, 1451-52 (9th Cir. 1993).

REPORT AND RECOMMENDATION - 9

ALJ erred by finding that Mr. Conger's PTSD was not medically determinable.

The ALJ similarly rejected Dr. Grekin's and other opinions about the severity of Mr. Conger's PTSD without providing adequate reasons supported by substantial evidence. Dr. Grekin opined that Mr. Conger had moderate or marked limitations in cognitive and social abilities due to his PTSD. Tr. 400. In addition, examining doctor Wayne Dees, Psy.D., opined that Mr. Conger's PTSD caused moderate limitations in his cognitive and social abilities. Tr. 374. These opinions establish that Mr. Conger's PTSD has more than a minimal effect on his ability to work, but the ALJ ignored them. The ALJ erred by finding Mr. Conger's PTSD to be not severe.

At step two of the evaluation process, Mr. Conger was required simply to show that he suffered from an impairment that imposed more than de minimis restrictions on his ability to perform basic work functions. This slight showing was more than adequately made with respect to Mr. Conger's PTSD. The ALJ erred in finding otherwise.

The Commissioner argues that any error at step two was harmless to Mr. Conger because the ALJ did not deny his claim at step two and because a finding that Mr. Conger's PTSD was a medically determinable severe impairment would not have changed the ALJ's decision. Dkt. 21 at 12-13. However, as Mr. Conger points out, the ALJ failed to consider whether Mr. Conger's PTSD met or equaled listing 12.06, anxiety related disorders. Moreover, given the fact that the ALJ ignored Dr. Grekin's and Dr. Dees's opinions about the severity of Mr. Conger's PTSD, the Court cannot say with confidence that the ALJ's RFC analysis would not change with consideration of the effects of Mr. Conger's PTSD. According, the Court finds that the ALJ's step two error was not harmless and remand is appropriate.

## C. The ALJ's assessment of the medical opinions

Mr. Conger next argues that the ALJ erred in evaluating the medical opinions of Dr. Grekin, Dr. Carstens, and Dr. Dees about Mr. Conger's functional limitations.

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester*, 81 F.3d at 830. Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing reasons." *Id.* at 830-31. Where contradicted, a treating or examining doctor's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct. *Orn*, 495 F.3d at 632 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

### 1. Dr. Grekin

When evaluating Mr. Conger's RFC, the ALJ found that although Dr. Grekin had a treating relationship with Mr. Conger, his opinions were not well supported. The ALJ noted that Dr. Grekin opined that Mr. Conger's impairments met a listing in 2006 even though he first examined Mr. Conger in 2007. The ALJ also found that Dr. Grekin's opinions were inconsistent with the medical record as a whole, which showed adequate performance on mental status exam and relatively intact daily activities. The ALJ thus gave Dr. Grekin's opinion little weight. Tr. 24-25.

Mr. Conger asserts that the ALJ did not address Dr. Grekin's September 2008 opinion. Dkt. 20 at 18. Although such an omission would be reversible error, the ALJ did not make this error here. In discussing Dr. Grekin's opinions, the ALJ referenced this opinion, stating: "In the fall of 2008, Paul Grekin, MD, the claimant's treating psychiatrist, opined moderate to marked cognitive limitations and mild to marked social limitations (14F)." Tr. 24. The ALJ then described Dr. Grekin's November 2008 opinion before stating his reasons for giving these opinions little weight. The ALJ did not err by failing to consider Dr. Grekin's September 2008 opinion.

However, the ALJ's reasons for rejecting Dr. Grekin's opinions were not adequate. First, an ALJ may not disregard a medical opinion solely because it is retrospective in nature. *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988); *see also* SSR 83-20 ("In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working."). This is true even for a doctor who did not see the claimant during the disability period. *See Smith*, 849 F.2d at 1225 (citing *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983).

Here, the ALJ rejected Dr. Grekin's opinions simply because they were retrospective, without considering the length of time Dr. Grekin was looking back or the basis for his opinion about Mr. Conger's functioning before their treatment relationship began. In addition, Dr. Grekin's opinions were only retrospective as to the period of time before he began treating Mr. Conger in September 2007. This reason thus does not even apply to the 18-month period from September 2007 until the onset date of June 2009 as found by the ALJ. As the ALJ's other reason for rejecting Dr. Grekin's opinions does not withstand scrutiny, as discussed below, the

1 mere fact that the opinions were retrospective was not a legitimate reason to reject them.

2 Second, an ALJ may reject a treating physician's opinion that is inconsistent with the
3 record and not supported by objective evidence. *See Meanel v. Apfel*, 172 F.3d 1111, 1113-14
4 (9th Cir. 1999). However, the record does not support the ALJ's finding that Dr. Grekin's
5 opinions were inconsistent with the objective evidence. The ALJ found that Mr. Conger had
6 "adequate performance" on mental status exams. Tr. 25. But the record shows that Mr.
7 Conger's mental status scores were below normal. In June 2006, upon examination by Luci
8 Carstens, Ph.D., Mr. Conger scored 27 out of 30 on mental status exam, "which falls below the
9 norm for his age/education." Tr. 387. In January 2007, Dr. Carstens noted that he scored 24 out
10 of 30, "which suggests mildly compromised cognitive functioning." Tr. 381. In September
11 2007, Dr. Grekin noted that Mr. Conger scored 20 out of 30. Tr. 404. In January 2008, upon
12 examination by Dr. Dees, Mr. Conger scored 26 out of 30. Tr. 377. The ALJ also found that
13 Mr. Conger had relatively intact daily activities. But, as discussed above, the fact that Mr.
14 Conger carries out the kinds of basic daily activities he reports is not incompatible with his
15 alleged symptoms or with a finding of disability. Substantial evidence does not support this
16 ALJ's reason for giving Dr. Grekin's opinions little weight.

17 In sum, the ALJ did not give specific and legitimate reasons, supported by substantial
18 evidence, for giving Dr. Grekin's opinions little weight. The ALJ therefore erred in assessing his
19 opinions.

20     *2.    Dr. Carstens*

21 Dr. Carstens evaluated Mr. Conger in June 2006 and January 2007.[5] In both evaluations,

---

[5] Dr. Carstens first evaluated Mr. Conger in December 2005. Tr. 391-94. The ALJ gave this assessment little weight because Mr. Conger denied alcohol or drug abuse or treatment at that time and because it occurred before Mr. Conger's amended alleged onset date. Tr. 24. Mr.

Dr. Carstens assigned Mr. Conger a global assessment of functioning (GAF) score of 45, indicating serious symptoms or a serious impairment in social, occupational, or school functioning,[6] and opined that he had mild, moderate, or marked limitations in cognitive functioning and mild or moderate limitations in social functioning. As noted above, Mr. Conger scored 27 out and 24 out of 30 upon mental status examinations, which Dr. Carstens characterized as "below the norm for his age/education" and as suggesting "mildly compromised cognitive functioning." Tr. 379-82, 385-88.

The ALJ found that Dr. Carstens's opinions were well supported by her objective findings and were partially consistent with the medical record. The ALJ found it difficult to determine whether she believed Mr. Conger had marked cognitive limitations overall, as she noted a marked limitation in the check-box portion of the forms, but also characterized his cognitive functioning as being mildly compromised. The ALJ therefore gave her opinions some, but not great weight. Tr. 24.

The fact that Dr. Carstens found Mr. Conger markedly limited in his ability to exercise judgment and make decisions but only mildly or moderately limited in other areas of cognitive functioning is not a legitimate reason to give her opinion less weight. This is particularly true where, as the ALJ found, Dr. Carstens's opinions are well supported by her objective findings. Dr. Carstens evaluated different facets of Mr. Conger's cognitive functioning, finding varying levels of impairments. The ALJ erred by concluding that these variations undermined Dr. Carstens's opinions.

In addition, to the extent that the ALJ rejected Dr. Carstens's opinions because they were

---

Conger does not assign error to this finding.
[6] Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 34 (4th ed. 1994).

REPORT AND RECOMMENDATION - 14

only "partially consistent" with the medical record, a mere statement that a medical opinion is contrary to the objective evidence is not sufficiently specific to reject the opinion. *See Embrey*, 849 F.2d at 421-22. In sum, the ALJ erred by failing to give specific and legitimate reasons for giving Dr. Carstens's opinion only some weight.

*3. Dr. Dees*

Wayne Dees, Psy.D., evaluated Mr. Conger in January 2008. Dr. Dees opined that Mr. Conger had mild to moderate limitations in both cognitive and social functioning and stated "Based on [patient] report of cognitive impairment he would have difficulty maintaining employment." Tr. 374. The ALJ found that Dr. Dees's opinion on Mr. Conger's cognitive and social difficulties was well-supported by his objective findings, but his opinion about Mr. Conger's difficulty maintaining employment was based on Mr. Conger's self-report. The ALJ also found that Dr. Dees diagnosed PTSD without Mr. Conger disclosing what issues resulted in his post-traumatic symptoms. The ALJ thus gave Dr. Dees's opinions some but not great weight. Tr. 24.

Although an ALJ may give less weight to a medical opinion that is based to a large extent on a claimant's self-reports that have been properly discounted as incredible, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), that is not the case here. To the contrary, the ALJ erred by finding Mr. Conger not fully credible. This was thus not a legitimate reason to give less weight to Dr. Dees's opinion.

In addition, as with Dr. Grekin's PTSD diagnosis, the ALJ rejected Dr. Dees's PTSD diagnosis because Mr. Conger did not disclose the nature of this underlying trauma. Again, it was error for the ALJ to reject the opinion of a medical professional who examined the claimant and determined that the diagnostic criteria for PTSD were met, simply because the ALJ did not

agree with the doctor's opinion.  The ALJ erred by rejecting Dr. Dees's PTSD diagnosis.  In sum, the ALJ erred by failing to give specific and legitimate reasons for giving Dr. Dees's opinion only some weight.

### D. Remand for further proceedings

Where an ALJ fails to provide adequate reasons for rejecting a physician's opinion, the Court may credit that opinion as a matter of law.  *See Lester*, 81 F.3d at 834.  This is also the case where the ALJ failed to provide adequate reasons for rejecting a claimant's credibility.  *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003).  However, courts retain flexibility in applying the credit as true theory.  *Id.*  Where it is not clear from the record that the ALJ would be required to award benefits if the evidence is accepted were credited, the Court may remand for further determinations.  *Id.*

The Court concludes that in this case, remand for further proceedings is appropriate.  On remand, the ALJ should reevaluate Mr. Conger's credibility and reassess the opinions of Dr. Grekin, Dr. Carstens, and Dr. Dees.  The ALJ should further develop the record and redo the five-step evaluation process as necessary.

### IV. CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings as detailed above.  Objections, if any to this Report and Recommendation must be filed and served no later than **January 26, 2012.**  If no objections are filed, the matter will be ready for the Court's consideration on **January 27, 2012**.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Responses to

1 objections must be filed no later than 14 days after being served with objections.  Objections and
2 responses shall not exceed twelve pages.  The failure to timely object may affect the right to
3 appeal.

DATED this 12th day of January, 2012.

BRIAN A. TSUCHIDA
United States Magistrate Judge